UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MOBIAPPS, INC., | ) | Case No. 06-CV-1745-LAB (JMA) |
| | ) | |
| Plaintiff, | ) | **ORDER RE PLAINTIFF/** |
| | ) | **COUNTERCLAIM DEFENDANT** |
| v. | ) | **MOBIAPPS' MOTION COMPELLING** |
| | ) | **PRODUCTION OF DOCUMENTS FROM** |
| QUAKE GLOBAL, INC., | ) | **DEFENDANT/COUNTERCLAIM** |
| | ) | **PLAINTIFF QUAKE GLOBAL** |
| Defendants. | ) | **CONCERNING THE Q1000** |
| | ) | |

**1.   Introduction**

Plaintiff and Counterclaim Defendant MobiApps, Inc. ("MobiApps") seeks an order compelling Defendant and Counterclaim Plaintiff Quake Global, Inc. ("Quake Global") to produce technical, marketing, and financial documents concerning Quake Global's Q1000 product in response to certain document requests. After counsel for the parties participated in a telephonic discovery conference with the Court's law clerk, the magistrate judge ordered the parties to brief the issue by way of alternating letter briefs. MobiApps submitted its initial letter brief on April 23, 2007. Quake Global submitted its opposition letter brief on April 26, 2007, and MobiApps submitted a reply

letter brief on April 30, 2007. (Copies of the parties' letter briefs are attached to this Order as attachments 1, 2 & 3, respectively.)

**2.  The Disputed Requests**

The disputed discovery requests are contained in MobiApps' First Set of Requests for Production of Documents and Things to Defendant Quake Global, Inc. and include the following:

21.  All documents relating to Quake's Q1000 product.

22.  All documents relating to the sale, licensing, or other exploitation of the Q1000 product or its technology.

...

24.  All documents relating to monies received in connection with the sale, licensing, or other exploitation of the Q1000 product or its technology.

25.  All communications between Quake and any third party relating to the Q1000 product.

26.  All communications between Quake and Orbcomm relating to the Q1000 product.

...

28.  All documents relating to the marketing, advertising, and promotion of the Q1000 product.

29.  All documents relating to internal names used by Quake for the Q1000 product and names used to refer to components of the Q1000 product.

30.  Documents sufficient to identify the purchasers of the Q1000 product.

...

32.  All documents relating to the Q1000 product that Quake provided to purchasers or prospective purchasers of the Q1000 product.

33.  All communications between Quake and any third parties relating to the Q1000 product.

In response to the each of the above-listed requests, Quake Global responded as follows:

>    Objection on grounds that this request seeks documents not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Further objections on grounds of overbreadth, vagueness, ambiguity, undue burden, and that the requested information is proprietary, confidential and competitively sensitive.

**3.   Legal Standard**

Under Federal Rule of Civil Procedure 26,

>    Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). In <u>Surfvivor Media, Inc. v. Survivor Productions</u>, the 9th Circuit stated:

>    Relevant information for purposes of discovery is information "reasonably calculated to lead to the discovery of admissible evidence." <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d 1465, 1470 (9th Cir. 1992)(citation omitted). District courts have broad discretion in determining relevancy for discovery purposes. See <u>Hallett v. Morgan</u>, 296 F.3d 732, 751 (9th Cir. 2002).

<u>Id</u>. 406 F.3d 625, 635 (9th Cir. 2005). To reiterate the federal rule, relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

**4.   Discussion**

As set forth below, MobiApps' requests for documents are relevant to its first and fourth claims for relief in this action. The Second Amended Complaint ("SAC") filed November 7,

2006 [Doc. No. 32] alleges:

    23. Section 10.4 of the [Product Joint Development and License Agreement, "JDA"] provides that: "neither party shall, directly or indirectly ... market or sell, or enter into any agreement with a third party to market or sell, a product designed to be used on the ORBCOMM system that would compete with, or make obsolete from a technological basis, the ASIC Product." ...

    24. MobiApps is informed and believes that, during the course of the JDA and contrary to the provisions of sections 7.4 and 10.4 of the JDA, Quake began secretly developing its own competing satellite communicator.

    25. On September 14, 2005, Quake issued a press release announcing the introduction of is Q1000 product. In the press release Quake stated that the "new modem is now at ORBCOMM for final FCC testing and will be available tor initial deliveries on October." ...

    26. The press release was the first MobiApps learned of Quake's competing Q1000 product.

    27. MobiApps is informed and believes that while Quake was secretly developing its competing Q1000 product that operated on the ORBCOMM network, Quake was contemporaneously failing or refusing to provide MobiApps with the technology and assistance it promised to provide pursuant to the JDA, thereby frustrating MobiApps' ability to develop its own ORBCOMM-compliant satellite communicator.

    ...

    58. MobiApps had an economic relationship with ORBCOMM that carried the probability of future economic benefit, including but not limited to, MobiApps' ability to have its products and technology qualified for use on ORBCOMM's network.

    59. Quake knew about the economic relationship between MobiApps and ORBCOMM which had the probability of future economic benefits to MobiApps.

    60. Quake, without legal justification, wrongfully, intentionally or negligently interfered with MobiApps' relationship with ORBCOMM by secretly developing its own competitive product while frustrating MobiApps' ability to develop the RF ASIC pursuant to the JDA.

61. As a result of Quake's conduct, MobiApps' relationship with ORBCOMM was disrupted.

MobiApps' first and fourth claims for relief, for breach of contract and interference with prospective economic advantage against Quake Global, are still in the case as Quake Global filed an Answer to the SAC on November 30, 2006. [Doc. No. 53.]

The full text of JDA § 10.4 reads:

> Except as allowed in Section 10.5 below, from the Effective Date of this Restated Agreement, and during the term thereof, through and only until June 30, 2007, <u>neither party shall</u>, directly or indirectly, whether as a shareholder, joint venture partner, member, consultant, independent contractor, or partner, on behalf of itself or any other person or entity, <u>market or sell</u>, or enter into any agreement with any third party to market or sell, <u>a product designed to be used on the ORBCOMM System that would compete with, or make obsolete from a technological basis, the ASIC Product</u>.[1]

(emphasis supplied.) The JDA was entered into by the parties on February 27, 2003 and was terminated pursuant to its terms on April 12, 2006. The press release for the Q1000 Modem was issued on September 14, 2005, while the JDA was in effect between MobiApps and Quake Global.

Quake Global's September 14, 2005 press release stated:

> Quake Global Introduces Q1000 Modem. [¶] Quake Global, Inc. announced the introduction of its new Q1000 — the smallest, and lowest priced satellite communicator (modem) ever made available for use on any satellite system. The new modem is now at ORBCOMM for final FCC testing, and will be available for initial deliveries in October [2005]. The Q1000 was developed to satisfy the strong customer demand for a very small-footprint modem at a price point under $100. ...

---

[1] Section 10.5 describes a mechanism for either party to withdraw from § 10.4 <u>after</u> "the RF ASIC has been completed and put into commercial service by customers as part of an RF Module."

5

The issuance of this press release gives rise to MobiApps' contention that Quake Global was in violation of § 10.4 of the JDA during the pendency of the JDA and is the basis for MobiApps' first and fourth claims for relief in the SAC.

Quake Global argues that documents related to its Q1000 product constitute "highly confidential proprietary information on unrelated matters." To the extent that the documents contain confidential proprietary information, the parties entered into a Stipulated Protective Order, signed by the Court on January 16, 2007, which governs the use and dissemination of documents reflecting trade secrets, current research and development or competitively sensitive information. [Doc. No. 63.] To the extent that Quake Global contends that documents related to the Q1000 constitute "unrelated matters," the allegations of the SAC and the language of § 10.4 of the JDA belie that contention. Documents related to the Q1000 are relevant to the issue of whether the Q1000 was a product that would have competed with the RF ASIC-based product. Because the documents are relevant to MobiApps' first and fourth claims for relief in the SAC and are reasonably calculated to lead to the discovery of admissible evidence, Quake Global must produce them under Rule 26(b)(1).

Quake Global's resistance to production of documents related to the Q1000 is, in the Court's view, an attempt to argue the merits of (or Quake Global's defenses to) MobiApps' breach of contract and interference with prospective economic advantage claims vis-a-vis the Q1000 product. This is not a proper basis upon which to object to MobiApps' document requests, and the issues of whether MobiApps' claims have merit or whether MobiApps

suffered damage as a result of the introduction and marketing of the Q1000 are not before the Court at this time.

**5.** <u>**Conclusion and Order**</u>

For the foregoing reasons, the undersigned magistrate judge finds that the documents requested are relevant to MobiApps' first and fourth claims for relief and are reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Quake Global shall produce documents responsive to MobiApps' requests for production of documents Nos. 21-22, 24-26, 28-30, 32 and 33 on or before May 18, 2007.

**IT IS SO ORDERED.**

DATED: May 2, 2007

_____
Jan M. Adler
U.S. Magistrate Judge