# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOBIAPPS, INC., a Texas corporation,<br><br>                  Plaintiff,<br><br>vs.<br><br>QUAKE GLOBAL, INC., a California corporation,<br><br>                  Defendant.<br>_____<br>QUAKE GLOBAL, INC., a California corporation,<br><br>                  Counter Claimant,<br><br>vs.<br><br>MOBIAPPS, INC., a Texas corporation; INTRINSIX, INC., a Massachusetts corporation; DOES 1 through 25, inclusive,<br><br>                  Counter Defendants. | CASE NO. 06cv1745-LAB (JMA)<br><br>[Related Case No. 06cv1574-LAB (JMA)]<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTER-DEFENDANT'S MOTION TO DISMISS AND STRIKE**<br><br>[Dkt Nos. 44, 54] |

    This matter is before the court on the motions of plaintiff/counterclaim defendant MobiApps, Inc. ("MobiApps") to dismiss defendant/counterclaimant Quake Global, Inc.'s ("Quake") Fourth Claim (fraud) and Fifth Claim (breach of fiduciary duty and constructive fraud) in Quake's First Amended Counterclaims ("FACC"), to strike Quake's prayer for

1  punitive damages, and for oral argument on the motion in this dispute arising from the
2  design, manufacture, and marketing of mobile satellite communications devices. Quake filed
3  an Opposition, and MobiApps filed a Reply. Pursuant to Civil Local Rule 7.1(d)(1), the court
4  finds the issues presented appropriate for decision on the papers and without oral argument.
5  Accordingly, MobiApp's Request for oral argument is **<u>DENIED</u>**.  For the reasons discussed
6  below, MobiApp's Motion is **<u>GRANTED IN PART</u>** and **<u>DENIED IN PART</u>**.

7  I.     BACKGROUND

8         Quake designs and manufactures satellite modems compatible with the ORBCOMM
9  satellite network using proprietary technology. MobiApps describes itself as a manufacturer
10 and provider of machine-to-machine cellular and satellite communications technologies
11 whose devices help companies track the location and monitor the operation of physical
12 assets in a wide range of global applications. Second Amended Complaint ("SAC") ¶ 4.
13 Quake's FACC alleges MobiApps approached Quake in January 2002 with a proposal that
14 Quake permit MobiApps to use Quake's design information for the limited purpose of
15 designing a smaller modem, with the assistance of MobiApp's selected designer, Intrinsix.
16 The objective was to produce a Radio Frequency Application Specific Integrated Circuit ("RF
17 ASIC") chip based on Quake's Q1500 RF design that both companies could use. In April
18 2002, Quake and MobiApps entered a Joint Product Development And License Agreement
19 ("JDA") and a Product Purchase Agreement ("PPA"). Both agreements were amended and
20 restated in the February 2003 operative agreements.

21        The development process took much longer than anticipated, The project continued
22 into April 2005, when a test version of the RF ASIC failed to reach predetermined contractual
23 benchmarks. Although Quake represents it was willing to continue the collaboration despite
24 the missed contractual benchmark, Quake understood MobiApps elected to abandon the RF
25 ASIC project. The JDA contains a provision addressing that eventuality, and provides "the
26 design and development effort shall cease and the Amended and Restated Product Joint
27 Development and License Agreement and the Amended and Restated Product Purchase
28 Agreement shall terminate in their entirety" when the contract termination provision is

invoked. FACC, Exh. A, JDA ¶ 2.7.3. In that event, "each party shall return to the other party, any and all Intellectual Property and technical materials provided to the other party under the Restated Agreement." FACC Exh. A, JDA ¶ 2.7.4.

Quake alleges MobiApps breached the project termination terms. Quake alleges MobiApps took the "test" version of the RF ASIC (containing Quake's proprietary information) that had fallen short of the performance benchmarks, acquired or built an RF module to house it in, and is now marketing satellite modems in competition with Quake, in contravention of another JDA provision.[1] Quake characterizes MobiApps' conduct as a failure to abandon the project or agree to extend it, with an attempt instead "to escape through a 'trap door' in the JDA which it claims permits it to keep and exploit Quake's technology without honoring the commensurate consideration obligations." Opp. 4:13-18.

MobiApps' November 7, 2006 SAC names Quake as the sole defendant and alleges causes of action for Breach Of Contract, Breach Of The Implied Covenant Of Good Faith And Fair Dealing, Quantum Meruit, Interference With Prospective Economic Advantage, Statutory Unfair Competition (CAL. BUS. & PROF. CODE I 17200, *et seq.*), and Declaratory Judgment. Dkt No. 32. Quake's FACC names MobiApps and Intrinsix and alleges causes of action for Breach Of Contract, Misappropriation Of Trade Secrets, Fraud In The Inducement, Breach Of Fiduciary Duty, Constructive Fraud, and Common Law Unfair Competition. Dkt No. 31. MobiApps now moves to dismiss Quake's Fourth Claim for Fraud In The Inducement, to dismiss its Fifth Claim for Breach Of Fiduciary Duty And Constructive Fraud, and to dismiss or strike its prayer for Punitive And Exemplary Damages.

## II. DISCUSSION

### A. Legal Standards

A FED. R. CIV. P. ("Rule")12(b)(6) motion to dismiss tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under this Rule is appropriate only where "it appears beyond doubt that the plaintiff can prove no

---

[1] "MobiApps agrees that it will not sell or otherwise transfer possession of any RF ASIC developed hereunder in any format other than as a component contained in an RF Module manufactured by Quake. . . ." FACC Exh. A, JDA ¶ 7.4(a).

1 set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Navarro</u>, 250 F.3d at 732.  Rule 12(b)(6) dismissal is warranted where the complaint lacks a cognizable legal theory. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984); *see* <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").  Alternatively, dismissal is warranted where the complaint presents a cognizable legal theory but fails to plead essential facts under that theory.  <u>Robertson</u>, 749 F.2d at 534; *see* <u>Balistreri v. Pacific Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).  When a Rule 12(b)(6) motion is granted, leave to amend is ordinarily denied only when it is clear that the deficiencies of the complaint cannot be cured by amendment.  <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).

In reviewing Rule 12(b)(6) motions, the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party, including all reasonable inferences to be drawn from the facts alleged. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987); <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).  When ruling on the motion, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice.  <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 705-706 (9th Cir. 1998).

### B.    Fraud In The Inducement

"Fraud in the inducement is a subset of the tort of fraud.  It 'occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual asset is present and a contract is formed, which, by reason of the fraud, is voidable.'" <u>Hinesley v. Oakshade Town Center</u>, 135 Cal.App.4th 289, 294-95 (2005), *quoting* <u>Rosenthal v. Great Western Fin. Securities Corp.</u>, 14 Cal.4th 394, 415 (1996) (internal citation omitted). "The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b)

scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damages." Id., *citing* Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).

MobiApps relies on Rule 9(b) in support of its Motion to dismiss the fraud claim: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b). Rule 9(b) imposes a heightened pleading requirement compared to notice pleading. The pleading of fraud must be sufficiently detailed so the defendant can prepare an adequate answer in defense of the allegations, "not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). "[M]ere conclusory allegations of fraud are insufficient." Moore v. Kayport Package Exp., Inc. 885 F.2d 531, 540 (9th Cir. 1989). An averment of "the circumstances constituting fraud" must identify what representation was made and why the statement or omission complained of was false or misleading. In re GlenFed. Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994) (applying Rule 9(b) standards to dismiss fraud claim).[2]

Quake contends it has sufficiently pled fraud in the inducement:

> Quake's claim is that **during the course of negotiations** of the venture to develop the RF ASIC, MobiApps induced Quake to reveal its proprietary trade secrets to it **through a pattern of representations** which MobiApps subsequently cavalierly disregarded, **even though many of them are in the signed writing**. Quake is not **merely** claiming that there was a single exchange wherein it was induced to change course; rather it was a **pattern of representations and assurances.**

Opp. 421-5:2 (emphasis added).

However, the FACC is devoid of any explanation of what facts were represented and why the statement(s) was false when made.

> During negotiations, Quake expressed reservations about the security of its intellectual property, including concerns that MobiApps, being primarily based in Asia, would abscond with Quake's intellectual property if disclosed by Quake and Quake would be left without a remedy. **MobiApps affirmatively**

---

[2] MobiApps relies on a number of shareholder securities fraud or RICO cases in support of its Motion. The court does not adopt as the pleading standard to state a fraud claim of those cases decided under the more stringent requirements of the Private Securities Litigation Reform Act, but rather the Rule 9(b) standards appropriate to this Motion.

> **represented that provisions they drafted and inserted in the JDA and PPA, would fully protect Quake** from having its proprietary trade secrets misappropriated and that Quake's trade secrets would be fully protected. ***Said representations* were made with the intention of inducing Quake to entrust its proprietary intellectual property and trade secrets to MobiApps**.

FACC ¶ 44 (emphasis added).

Quake alleges that in agreeing to execute the JDA and PPA, Quake "reasonably relied" on those generalized characterizations, whereas "[t]he representations were in fact false. . . ." FACC ¶¶ 45-46. Quake thus suggests it relied on MobiApps' purported representations about *the legal effect* of contract provisions intended to address Quake's confidentiality concerns that allegedly turned out to be false. Reliance on MobiApps' representations regarding *the legal effect* of particular contract language is insufficient to satisfy the element of false facts or fraudulent omissions inducing justified reliance, particularly as the parties appear to have been represented by independent counsel during the contract formation process. Reading the FACC as a whole, the only inference of false factual representations appears to arise in connection with the breach of contract allegations.

> **Quake is informed and believes and thereon alleges** that the true facts were that MobiApps used **a pretextual termination** to eliminate Quake from the continuing development of the RF ASIC for its own account, and continued to develop the product using Quake's proprietary trade secrets without Quake's involvement or permission.

FACC ¶ 46 (emphasis added).

On that basis, Quake alleges it "has been damaged in its business as a consequence of the foregoing," and "MobiApps acted with malice, oppression and fraud within the meaning of California Civil Code § 3294. . ." FACC ¶¶ 47-48. The Fourth Claim thus relies on conduct associated with the *termination* of the parties' contractual relationship rather than its formation. Although the Fraud In The Inducement claim also expressly incorporates by reference FACC ¶¶ 1-20, 22-24, 28-31, and 35-38, those paragraphs do not cure the pleading defects. None of those paragraphs, taken together, states the claim because they are devoid of any allegation MobiApps made any particular factual misrepresentation(s) in the process of coming to terms with Quake for pursuit of their project upon which Quake

detrimentally relied. The allegations from those paragraphs merely supply the additional facts: MobiApps approached Quake because it wanted to develop a small modem (transceiver) compatible with the ORBCOMM satellite system to use in its proposed automobile telematics device (FACC ¶ 7), something MobiApps could not do on its own (FACC ¶ 9); MobiApps proposed the two companies jointly develop a small RF ASIC to meet MobiApp's size requirements which would contain Quake's transceiver design on a computer chip (FACC ¶ 7); the parties executed the revised and amended JDA, which recites Quake's contribution to the joint development project was "certain proprietary technologies enabling the design of satellite communication projects for the ORBCOMM system as well as other proprietary technologies with respect to wireless communications" (FACC ¶ 9); MobiApps provided the monetary investment and chose the development house, counterclaim defendant Intrinsix (FACC ¶ 9); "the venture was to create a new product incorporating Quake's proprietary intellectual property, and upon completion of the RF ASIC to contract specifications, each company would own one-half of the final RF ASIC product, and each would have the right to exploit that product in conformance with the terms of the JDA and PPA, which include cross-licensing provisions and limitations on manufacture, as well as detailed provisions for protection of proprietary intellectual property," but "as reflected in the JDA and PPA," MobiApps "was never to own Quake's intellectual property, nor would MobiApps ever be able to exploit Quake's Q1500 design" on which the RF ASIC design was based "beyond the term of the JDA and PPA" (FACC ¶ 10); "MobiApps invoked the provision of [JDA] paragraph 2.7.3 on April 12, 2006, and declared the contract terminated" when certain contractual benchmarks were not met, despite Quake's offer to continue the development process (FACC ¶¶ 12-13).

JDA paragraph 2.7.3 provides that in the event the termination provision were invoked, "the design and development effort shall cease." FACC ¶ 14. Quake alleges MobiApps did not honor that provision. Instead, among other things, "either by itself or in conjunction with Intrinsix, [MobiApps] has continued the project and is exploiting Quake's intellectual property in derogation of the JDA" (FACC ¶ 14), has refused to return Quake's

intellectual property as contractually required, and has "continued to develop subscriber communication products utilizing that RF ASIC that are intended to directly compete with Quake's products in violation of the JDA." FACC ¶¶ 15-18. A license incorporated into the JDA would have permitted MobiApps to use Quake's Q1500 design, but the license terminated pursuant to JDA paragraph 7.2 along with the JDA. FACC ¶ 20. FACC paragraphs 22-24 and 28-31 allege Quake has performed all conditions and covenants required of it under the JDA and damages.

The FACC also alleges "MobiApps acquired Quake's trade secrets with express knowledge of circumstances giving rise to the duty to maintain its secrecy and limit its use, including knowledge of the express terms governing confidentiality **set forth in the JDA and PPA**." FACC ¶ 35 (emphasis added). Quake alleges MobiApps and Intrinsix "have continued to utilize and exploit Quake's intellectual property and trade secrets, which they received in confidence, and to wrongfully attempt to commercially exploit it," entitling Quake to recover its actual losses as well as damages for unjust enrichment. FACC ¶¶ 36. The effect of confidentiality agreements on fiduciary duty claims is discussed in the next section.

To survive dismissal, the fraudulent inducement for Quake to turn over its proprietary information to MobiApps must be alleged in a fashion that shows "why a given statement was false or misleading. . . *when made*." Hockey v. Medhekar, 30 F.Supp.2d 1209, 1213 (N.D. Cal. 1998) (emphasis added) ("plaintiffs cannot plead 'fraud by hindsight,' in which later events are used to support the falsity of earlier statements"), *citing* GlenFed, 42 F.3d at 1548. MobiApps argues Quake has failed to plead fraud with the requisite specificity. Mot. 3:6-9; *see* U.S. Concord, Inc. v. Harris Graphics Corp., 757 F.Supp. 1053, 1057 (N.D. Cal. 1991) (holding vague allegations regarding the timing of fraudulent conduct spanning several months, and lacking any identification of time, place, and contents of the misrepresentations, "do not make the grade," because the plaintiff must establish it relied on the misrepresentation in entering the contract), *citing* Rule 9(b) and Semegen, 780 F.2d at 731.

MobiApps contends the FACC "fails to allege any contemporaneous facts that would show that MobiApps' alleged statements were false at any time, much less false when made

as required." Mot. 4:2-3. Quake's allegations of a "pretextual termination" of the JDA relate to a time frame three years after MobiApps purportedly represented "Quake's trade secrets would be fully protected," and after contractual benchmarks established by mutual consent failed to be achieved. Those circumstances permit only the most inchoate inference that MobiApps intended somehow to deceive Quake at the inception of their contractual relationship for the purpose of later misappropriating the proprietary technology.

Moreover, the court construes MobiApps' purported assurances to be legal conclusions rather than factual representations of the kind adequate to support the claim. Quake "fails to allege facts which would show that Quake had a right to rely on MobiApps' purported representations." Mot. 3:13-15. Quake contends MobiApps reassured it contract language addressed its concerns about the protection of proprietary information. The court concludes no reasonable factfinder could find Quake's purported reliance on MobiApp's characterization of the contract's legal import constituted a justifiable inducement.

Quake pleads "on information and belief" that MobiApps' *termination* of their agreement was "pretextual," and its *termination* conduct (not its contract formation conduct) constitutes "more than a garden variety breach, but one [*i.e.*, a *breach of contract*] that rises to the level of willful misappropriation." Opp. 6:18-21 (emphasis added). Factual representations made during the contractual formation process that later turn out differently than expected do not provide a foundation from which a factfinder can reasonably infer the alleged misrepresentations were false at the time they were made or that they were made with knowledge of their falsity and with the intent to induce reliance. *See* Smith v. Allstate Ins. Co., 160 F.Supp.2d 1150, 1153-54 (S.D. Cal. 2001) (without pleading specific facts indicating the alleged misrepresentations were false when made, "every breach of contract [claim could] support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise") (citation omitted).

For all the foregoing reasons, the Rule 12(b)(6) Motion to dismiss Quake's Count Four Fraud In The Inducement cause of action is **GRANTED**.

\\

### C. Breach Of Fiduciary Duty And Constructive Fraud

California law recognizes two types of fiduciary duties: those imposed by law and those undertaken by agreement. GAB Bus. Services, Inc. v. Lindsey & Newsom Claim Services, Inc., 83 Cal.App.4th 409, 416 (2000), *overruled on other grounds in* Reeves v. Hanlon, 33 Cal.4th 1140 (2004). Those imposed by law are limited to "certain technical legal relationships such as those between partners or joint venturers, . . . husbands and wives . . . guardians and wards, trustees and beneficiaries, principals and agents, and attorneys and clients." Id. Quake clarifies it "is not claiming a technical fiduciary relationship; it alleges a fiduciary relationship arising from promises made by MobiApps and concomitant entrustment of its proprietary intellectual property," a claim Quake contends is not covered by the JDA terms. Opp. 8:27-9:3. MobiApps moves to dismiss Quake's Count Five breach of fiduciary duty and constructive fraud cause of action on the ground Quake has not alleged, nor can it allege, the type of relationship required for fiduciary duties to attach.

As MobiApps argues: "It is a well-settled principle that parties to a contract do not by necessary implication become fiduciaries." Mot. 5:3-5, *quoting* City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1049 (N.D.Cal. 2002), *citing* Gonsalves v. Hodgson, 38 Cal.2d 91, 99 (1951). "Nor are fiduciary obligations imposed simply because the parties to a contract reposed trust and confidence in each other." City Solutions, 201 F.Supp.2d at 1049 ("The existence of a detailed confidentiality agreement suggests arms-length dealings between co-equals"), *citing* Girard v. Delta Towers Joint Venture, 20 Cal.App.4th 1741, 1749 (1993); *see* GAB Bus. Services, 83 Cal.App.4th at 417; *see also* Davies v. Krasna, 14 Cal.3d 502, 511 (1975) (holding an author's submission of a story to a playwright in confidence, which the playwright incorporated into a successful play, may have created "a duty [on the part of the playwright] to refrain from unauthorized disclosure of the idea, but [the circumstances of the transaction] are insufficient to impose upon him the fiduciary-like duties that arise from a confidential relationship"). Fiduciary obligations will be recognized only when the person so charged "either knowingly undertake[s] to act on behalf and for the benefit of another, or . . . enter[s] into a relationship

which imposes that undertaking as a matter of law." <u>Comm. on Children's Television, Inc. v. Gen Foods Corp.</u>, 35 Cal.3d 197, 221 (1983).

The thrust of this cause of action is that MobiApps allegedly retained Quake's proprietary trade secrets -- in the form of its retention of the RF ASIC product containing Quake's proprietary information -- *in violation of the JDA terms* regarding the return of property upon the termination of the JDA. *See* FACC ¶ 56. Quake seeks an Order to compel MobiApps to convey all such property to Quake, *as provided in the JDA.* In deciding a Rule 12(b)(6) motion, the court need not accept as true legal conclusions cast as facts, such as Quake's contention "MobiApps **assumed the duties of a trustee** with respect to information that was to be used exclusively for the benefit of Quake and MobiApps jointly." FACC ¶ 52 (emphasis added). A fair reading of the FACC substantiates Quake actually relies for its counterclaims, including this one, on the terms of the contracts:

> At all relevant times hereto, a confidential and fiduciary relationship existed between Quake and MobiApps *by virtue of the representations contained in the JDA and PPA*, pursuant to which Quake reposed trust and confidence in MobiApps by disclosure of its confidential and proprietary information to MobiApps.

FACC ¶ 50 (emphasis added).

Quake alleges it imparted its valuable information to MobiApps "because MobiApps induced Quake to trust and confide in the integrity and fidelity of MobiApps **by its promise to honor the terms of the JDA and PPA.**" FACC ¶ 51 (emphasis added). The court finds that characterization describes the general obligations and reliance of all parties who execute contracts for consideration. The remedy for breaches of contractually assumed obligations (including confidentiality agreements) lies in actions for breach of contract, irrespective of the degree of trust placed by one party in the "integrity and fidelity" of the other to perform as promised.[3]

---

[3] The existence of confidentiality agreements supports an inference that no fiduciary relationship was established or intended. *See* <u>City Solutions</u>, 201 F.Supp.2d at 1049 ("The existence of a detailed confidentiality agreement suggests arms-length dealings between co-equals"); *see also* <u>Worldvision Enterprises, Inc. v. American Broadcasting Cos., Inc.</u>, 142 Cal.App.3d 589, 595 (1983) ("The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act

The pleadings establish Quake and MobiApps negotiated a business transaction intended to benefit both companies equally, as memorialized in the JDA and PPA. No inference can be drawn from the FACC allegations or the JDA that MobiApps was in a superior position to Quake or that MobiApps accepted any obligations beyond those memorialized in the JDA, in particular some fiduciary or trustee role. Explicit language in the JDA is incompatible with Quake's characterizations of the parties' relationship:

> Nothing in this Restated Agreement shall cause or be deemed to cause the parties to be partners or joint venturers with, or agent[s] or employees of, each other. **The parties are independent contractors,** and neither party shall have any right or power to create any obligation or responsibility on behalf of the other party.

FACC Exh. A, JDA § 14.8 (emphasis added).

Both sides acknowledge and rely on the JDA as controlling their respective rights and obligations. Express terms of the JDA permit no inference other than that the parties were co-equal collaborators who joined forces to jointly develop particular products with the aim of a future purchase and sale relationship beneficial to both. *See, e.g.* FACC Exh, A, JDA "Recitals" at p. 1. Quake implicitly acknowledges the parties formally agreed that Quake's technology was proprietary, and MobiApps' access to it was for an authorized, if limited, purpose. FACC ¶ 49. Quake cannot demonstrate MobiApps undertook to act on behalf of Quake, assumed a position superior to Quake's in the enterprise they jointly undertook, or otherwise dealt on unequal terms in their arms-length business transaction, or that MobiApps expressly accepted any legally cognizable fiduciary duty towards Quake.

Quake's argument <u>Stevens v. Marco</u>, 147 Cal.App.2d 357 (1956) is "on all fours" with this case is not persuasive as supporting its fiduciary duty claim.[4] As distinguished by

---

creating or establishing a fiduciary relationship known to law"). Quake alleges no such "act."

[4] Stevens, a self-educated inventor with less than a high school education, consulted Marco, a lawyer and officer of a company capable of manufacturing plaintiff's invention, who agreed to complete the engineering and to prosecute a patent application for the invention. Stevens assigned the rights to his invention to Marco in return for royalties. Marco subsequently induced Stevens to release all further rights by falsely telling him the patent was invalid. <u>Stevens</u>, 147 Cal.App.2d at 362-64, 370. On that basis, the court determined a factfinder could conclude Marco had fraudulently procured the release. <u>Id.</u> at 374. The <u>Stevens</u> court held plaintiff stated a *prima facie* case of fraud and breach of contract because a jury could find that defendant had fraudulent procured a release

1  MobiApps, Stevens involved claims of breach of contract and fraud, not breach of fiduciary
2  duty, although the court characterized the parties' relationship as fiduciary,[5] in the context
3  of an enterprise similar to a joint venture,[6] a relationship expressly disclaimed by these
4  parties. JDA at ¶ 14.8. In addition, Stevens is factually distinguishable.[7]

5  For all the foregoing reasons, the court finds Quake has not pled a cognizable claim
6  for breach of fiduciary duty. Absent a fiduciary relationship, Quake cannot state a claim for
7  constructive fraud. See In re Harmon, 250 F.3d 1240, 1249 n.10 (9th Cir. 2001)
8  ("Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential
9  relationship"), citing Assilzadeh v. Cal. Fed. Bank, 82 Cal.App.4th 399, 415 (2000).
10 Moreover, the court concurs with MobiApps' characterization that "Quake's constructive fraud
11 allegations (to the extent they can be parsed from Quake's breach of fiduciary duty
12 allegations) are wholly conclusory and are lacking in any factual detail whatsoever." Mot.
13 9:10-4, citing FACC ¶¶ 50-54. The Motion to dismiss Quake's Fifth Cause of Action for
14 Breach of Fiduciary Duty and Constructive Fraud is **GRANTED**.

15 \\

16 **D.    Punitive And Exemplary Damages**

---

of rights to an invention and "the parties were allied in an enterprise similar to [a joint venture]." Stevens, 147 Cal.App.2d at 374.

[5] That characterization was supported by facts not present here permitting the court to acknowledge such indices as: Marco was in a superior position to Stevens because only Marco was aware of the details of the confidential application process; and a "secret" invention was entrusted to Marco for development and exploitation in return for royalties.

[6] "A joint venture is a distinct entity virtually identical to a partnership, and capable of contracting -- that is, acquiring obligations -- in its own name." Victor Valley Transit Authority v. Workers' Compensation Appeals Bd., 83 Cal.App.4th 1068, 1076 (2000).

[7] Other authority Quake offers in opposition to the Motion is similarly distinguishable. Roberts v. Heim, 123 F.R.D. 614 (N.D.Cal.1988) involved a dispute between general and limited partners under securities law, a relationship where partners are recognized as trustees for each other, with recognized fiduciary obligations arising automatically by virtue of that relationship. Concha v. London, 62 F.3d 1493 (9th Cir. 1995) involved a dispute between fiduciaries of an ERISA plan and plan administrators (accountants, actuaries, and attorneys) as co-fiduciaries. Michelson v. Hamada, 29 Cal.App.4th 1566 (1994) involved a dispute between a principal and agent. Church of Scientology International v. Eli Lilly & Co., 848 F.Supp. 1018 (D.D.C. 1994) (applying District of Columbia law) found a question of fact existed as to whether a church and it public relations firm had a fiduciary relationship.

A Rule 12(f) motion to strike "may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." Bureerong v. Uvawas, 922 F.Supp. 1450, 1479 n.34 (C.D. Cal. 1996). MobiApps moves to dismiss or strike Quake's punitive or exemplary damages request in connection with its Third, Fourth, Fifth, and Sixth causes of action on grounds "the parties expressly agreed in the JDA that damages of this nature were *not* recoverable" Mot. 9:20-22. The Fourth and Fifth Claims are dismissed through this Order. The FACC's Third Claim alleges violation of the Uniform Trade Secrets Act, CAL. CIV. CODE §§ 3425, *et seq.,* and its Sixth Claim alleges common law unfair competition. MobiApp's characterizes each of the FACC causes of action for which Quake seeks punitive damages as concerning "MobiApps' alleged conduct in connection with the negotiation and performance of the JDA." Mot. 10:6-15, *citing* FACC ¶¶ 35, 43-45, 50-53, 59, *and citing* CAZA Drilling, Inc. v. TEG Oil & Gas U.S.A., Inc., 142 Cal.App.4th 453, 467, 471-72 (2006) (upholding a grant of summary judgment based on a contractual limitation of liability clause which did not exempt a party from all liability, but merely limited its responsibility with respect to economic damages), *citing* Farnham v. Superior Court, 60 Cal.App.4th 69, 74 (1997) ("Although exemptions from *all* liability for intentional wrongs, gross negligence and violations of law have been consistently invalidated [citations], we have not found any case addressing a *limitation* on liability for intentional wrongs, gross negligence or violations of the law").

The JDA provides, in pertinent part:

> 9.4 <u>Limitations of Liability</u>.  EXCEPT AS OTHERWISE SPECIFIED IN THIS AGREEMENT, **NEITHER PARTY SHALL, UNDER ANY CIRCUMSTANCES, BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL INCIDENTAL, OR EXEMPLARY DAMAGES** (INCLUDING WITHOUT LIMITATION, LOST PROFITS, LOSS OF ANTICIPATED BUSINESS, LOSS OF DATA, OR BUSINESS LOSSES) EVEN IF SUCH DAMAGES ARE FORESEEABLE, AND EVEN IF THE BREACHING PARTY HAS BEEN APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING. ***THE LIMITATIONS OF THIS SECTION 9.4 SHALL NOT PRECLUDE CLAIMS FOR ACTUAL AND DIRECT DAMAGES***, INCLUDING WITHOUT LIMITATION EXPENSES AND CHARGES INCURRED BY A PARTY AS A RESULT OF THE OTHER PARTY'S BREACH AND EXPENSES AND CHARGES TO MITIGATE DAMAGES RESULTING FROM

THE OTHER PARTY'S BREACH.

FACC Exh. A, JDA ¶ 9.4 (emphasis added).

Quake characterizes the JDA ¶ 9.4 as an attempt to *exempt* a party from liability for willful conduct (Opp. 9:27-10:8) and argues the "purported contractual waiver of punitive damages violates public policy," relying on CAL. CIV. CODE § 1668[8] and Stirlen v. Supercuts, Inc., 51 Cal.App.4th 1519, 1529-30 (1997). However, the Stirlen court did not separately address the question whether the contractual restriction at issue there (restricting the remedies for violation of the parties' employment contract -- including an arbitration clause and a limitation on the amount of any monetary award "not to exceed the amount of actual damages for breach of contract," expressly excluding any other "money damages [and] exemplary damages" -- among other things) violated public policy, but rather resolved the question presented through analysis under unconscionability of contract provision principles.

MobiApps argues the JDA type of bargained-for exchange does not violate public policy, and the limitation applies equally to MobiApps, distinguishing Stirlen, where the court found the remedy provisions at issue to be so "egregiously one-sided" as to render the contract unenforceable. Reply p. 10 n.6. MobiApps argues CAL. CIV. CODE § 1668 does not apply here because, by its terms, the JDA only *limits* liability, and only for certain types of damages, while expressly permitting "claims for actual and direct damages." Reply 9:6-12.

This Order eliminates the separately-pled fraud causes of action from this litigation.[9] However, Quake's FACC also alleges "malice, oppression and fraud within the meaning of California Civil Code § 3294" associated with its Sixth Claim for Common Law Unfair Competition (FACC ¶ 61) and seeks punitive damages associated with that claim. The court notes MobiApps' SAC prays for punitive damages associated with its own Fifth Claim

---

[8] "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." CAL. CIV. CODE § 1668

[9] Only Quake's FACC alleged separate causes of action for fraud or fiduciary duty breaches (Fourth and Fifth Claims). In arguing for dismissal of Quake's breach of fiduciary duty claim, MobiApps states: "To the extent Quake's claim is not dismissed, MobiApps requests that the Court grant it leave to amend its complaint to allege a similar claim for breach of fiduciary duty against Quake." Mot. p. 8 n.4. The request is now moot.

1  for statutory unfair competition (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*) "to the extent
2  such damages are . . . not precluded by the damages limitation set forth in section 9.4 of the
3  JDA."  SAC 11:1-3; Reply 9:23-10:2.  The court finds the issue of punitive damages
4  associated with either side's unfair competition claims is not adequately presented through
5  this Motion, and the court expresses no opinion at this time on those claims or the effect of
6  JDA § 9.4 on the availability of punitive damages associated with those claims. Accordingly,
7  the Motion to strike Quake's punitive damages claim is **DENIED**.

8  **E.    Leave To Amend Would Be Futile**

9  When the court determines a party cannot allege "other facts consistent with the
10 challenged pleading" that would cure the deficiencies, dismissal of the deficient claim without
11 leave to amend is proper.  Schreiber Distrib. Co. v. Serv-Well Furniture Co. Inc., 806 F.2d
12 1393, 1401 (9th Cir. 1986).  For the reasons discussed above, the court concludes the
13 deficiencies in Quake's pleading of its Fourth and Fifth causes of action cannot be cured
14 through repleading, warranting dismissal of those claims with prejudice.

15 **III.   CONCLUSION AND ORDER**

16 For all the foregoing reasons, **IT IS HEREBY ORDERED**:

17 1.   MobiApps' Motion To Dismiss the FACC Fourth Claim for fraud in the
18 inducement is **GRANTED**.

19 2.   MobiApps' Motion To Dismiss the FACC Fifth Claim for breach of fiduciary duty
20 and constructive fraud is **GRANTED**.

21 3.   MobiApps' Motion To Dismiss Or Strike the FACC prayer for punitive and
22 exemplary damages is **DENIED**.

23 **IT IS SO ORDERED**.

24 DATED: May 9, 2007

25
26 *[signature]*
   **HONORABLE LARRY ALAN BURNS**
   United States District Judge
27
28